IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 2, 2024

### STATE OF TENNESSEE v. WILLIS HOLLOWAY

**Appeal from the Criminal Court for Shelby County**
No. 09-01388    Lee V. Coffee, Judge

_____

**No. W2023-00787-CCA-R3-CD**
_____

A Shelby County jury convicted the Defendant, Willis Holloway, of two counts of aggravated robbery, two counts of aggravated kidnapping, and one count of aggravated burglary, and the trial court sentenced him to 135 years in the Tennessee Department of Correction. After an unsuccessful appeal, post-conviction filing, and extraordinary relief filing, in December 2022, the Defendant filed a Rule 36.1 motion challenging an unconstitutional jury instruction. He then filed a supplemental motion claiming "actual innocence." The trial court denied his Rule 36.1 motion. The Defendant filed a motion to reconsider, which the trial court denied, and the Petitioner now appeals. The State asserts that, pursuant to Tennessee Rule of Appellate Procedure 4(a), the appeal is untimely. After review, we dismiss the appeal as untimely.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which TOM GREENHOLTZ, and KYLE A. HIXSON, JJ., joined.

Willis Holloway, Henning, Tennessee, Pro Se.

Jonathan Skrmetti, Attorney General and Reporter; Brooke A. Huppenthal, Assistant Attorney General; Steven J. Mulroy, District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts

This case arises from the Defendant's participation in a robbery, kidnapping and burglary in 2008. For his actions, a Shelby County grand jury indicted him for two counts of aggravated robbery, two counts of aggravated kidnapping, and one count of aggravated

burglary.  In our opinion on direct appeal, we summarized the facts, and the following is a brief overview of those facts:

Clarence Powers, who was eighty-five, owned a rental home on Sparks Street that he showed to Charles Jackson, the Defendant's co-defendant, on September 16, 2008. Jackson liked the house and made an appointment for his sister to see it sometime between 10:30 and 11:00 a.m. the next day.  On the morning of September 17, between 10:30 and 11:00 a.m., a man and a woman rang the doorbell.  Mrs. Powers answered the door and a man told her, "'I'm here to look at the house."  Mrs. Powers walked away from the door, and Jackson and the Defendant came inside.  Both men were armed.  Jackson pointed a gun at Mr. Powers, told him it was a hold-up, and forced him to get onto the ground. Meanwhile, the Defendant ran to the back of the house.

Jackson asked the whereabouts of Mr. Powers's safe, and, after Mr. Powers denied having a safe, Jackson grabbed him by his belt, carried him into the den, and threw him onto a love seat.  The Defendant brought Mrs. Powers into the same room and forcibly placed her onto the couch.  Jackson ordered the Defendant to get duct tape from the truck, and, after the Defendant retrieved it, the Defendant put on gloves and then taped Mrs. Powers hands behind her back, her legs together, and put tape on her face.  He then taped Mr. Powers in the same manner.  The Defendant and Jackson ransacked the house and left. Mr. Powers freed himself and his wife and immediately locked the front door.  The Defendant and Jackson returned to the house, found the front door locked, and left.  Mrs. Powers looked out a window, and saw a dark-colored van backing out of the driveway. Mr. Powers called the police and reported the incident, in which the Defendant and Jackson took his wife's jewelry, his new "pump" gun, seven hundred and fifty dollars, and a small safe containing eight thousand dollars.

During the police investigation, law enforcement showed Mr. Powers some photograph arrays, the first of which did not contain photographs of either the Defendant or Jackson, and he did not identify anyone.  A confidential informant later gave law enforcement the names of the four suspects.  They then created arrays of suspects that included the Defendant and Jackson's photographs, and Mr. Powers identified them as the robbers.  He also identified the Defendant at the preliminary hearing.  Law enforcement officers created an array of all female suspects that included suspect Larrisa Richardson, and Mrs. Powers identified her photograph as being the woman who knocked on her door. Mrs. Powers identified the Defendant in court as the man who knocked on her door and bound her hands and feet with duct tape on September 17, 2008.

Officers with the Memphis Police Department responded to the Powers' robbery call and found duct tape on a table in the living room and on a dresser in a bedroom. The officers gathered information and evidence, attempted to retrieve fingerprints, and photographed the scene.

Kim West testified that she participated in this robbery along with the Defendant, Jackson, and Larrisa Richardson. For her participation, she pleaded guilty to facilitation of aggravated robbery. Ms. West said the Defendant attacked her and forced her to act as the lookout while the other three ran inside the Powers' home. The Defendant, Jackson and Ms. Richardson arrived at the Powers' home in a brown and white van, but Ms. West did not arrive with them. The Defendant entered the house first, Jackson followed him, and Richardson stood outside the door.

Ms. Richardson, formerly Jackson's live-in girlfriend, knew Ms. West and the Defendant from "the neighborhood." On September 17, 2008, Richardson participated in the crimes with West, the Defendant, and Jackson by knocking on the front door and walking away after it was answered. She saw the Defendant and Jackson enter the house.

Charles Jackson testified that on September 17, 2008, he and Richardson were living together in a room at a rooming house. He explained his whereabouts that day and denied being involved in the robbery. He acknowledged having a 2002 conviction for felony theft. On cross-examination, Jackson testified that he knew the Defendant "from the streets." He said that Richardson smoked marijuana but that he did not smoke marijuana or crack cocaine. He said he did not have a job and paid for his room at the rooming house by selling drugs.

Based upon this evidence, the jury convicted the Defendant for two counts of aggravated robbery, two counts of aggravated kidnapping, and one count of aggravated burglary, and the trial court sentenced him to 135 years in the Tennessee Department of Correction. *State v. Jackson and Holloway*, No. W2010-01133-CCA-R3-CD, 2012 WL 543047, at *7 (Tenn. Crim. App. Feb. 17, 2012), *perm. app. denied* (Tenn. June 2, 2012).

The Defendant appealed, and this court affirmed his convictions. *Id.* at *1, *14. The Defendant filed a petition for post-conviction relief in which he alleged that he received the ineffective assistance of counsel. *Holloway v. State*, No. W2014-02444-CCA-R3-PC, 2015 WL 6122155 (Tenn. Crim. App. Oct. 16, 2015), *perm. app. denied* (Mar. 23, 2016). The post-conviction court denied him relief, and this court affirmed. *Id.* at *1.

On March 8, 2017, the Petitioner filed a "Petition for Extraordinary Relief," claiming that: (1) the sentences in counts 1, 2, 3, 4, and 5 were duplicitous; (2) counts 1, 2, 3, 4, and 5 were void for indefiniteness, for failure to inform the Petitioner of the nature of the offenses; (3) the indictment was defective because the co-defendants pleaded guilty to facilitation of a felony before the Petitioner and co-defendant Jackson had been convicted of the underlying felony; (4) the trial court charged the jury incorrectly, resulting in a constructive amendment to the indictment; and (5) trial and post-conviction counsel were ineffective. *Holloway v. State*, No. W2017, 01573-CCA-R3-PC, 2018 WL 3954195, at *1 (Tenn. Crim. App., Aug. 16, 2018), *no perm. app. filed.* The post-conviction court treated the petition as a post-conviction petition and denied relief. *Id.* This court affirmed. *Id.*

3

On November 16, 2022, the Defendant filed a Motion to Correct an Illegal Sentence pursuant to Rule 36.1. In it, he noted that the Tennessee Supreme Court in *State v. White*, 362 S.W.3d 559 (Tenn. 2012), had ruled that a defendant's due process rights had been violated upon a kidnapping conviction because the jury instruction had failed to ask the jury to determine whether the victim's confinement was essential to the accompanying felony offense of aggravated robbery. He contended that the confinement of the victims in this case was essential to the accompanying felony offense of aggravated robbery, so his due process rights were violated and his kidnapping convictions were illegal. He further contended that his trial counsel was ineffective for not challenging this matter in the trial court and that his post-conviction counsel was ineffective. He then maintained the arguments from his previous 36.1 motion, already decided by this Court.

The trial court denied the Defendant's motion on January 23, 2023, finding that the Defendant had not stated a colorable claim. It stated:

> Rule 36.1 does not expand the scope of relief from illegal sentences beyond that available in habeas corpus proceedings. Therefore, Rule 36.1 does not authorize the correction of "expired" illegal sentences.

The court found that the Defendant's sentence was not illegal, an issue that had previously been addressed by the appellate court. The court then went through the lengthy procedural history of this case, and it found that the issues raised by the Defendant had been previously determined and/or waived. The court finally noted that this case had been decided before the *White* decision and that retroactive application of that decision was not required.

On May 15, 2023, the Defendant filed a "motion to reconsider" the trial court's ruling. The trial court denied the motion on May 18, 2023, and on May 30, 2023 the Defendant filed his notice of appeal. It is from that judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it denied his Rule 36.1 motion. The State counters that his notice of appeal was untimely and it was not in the interest of justice to waive that requirement. We agree with the State.

Pursuant to Rule 4, Tennessee Rules of Appellate Procedure, a notice of appeal shall be filed within thirty days after entry of the judgment from which an appeal is sought. Tenn. R. App. P. 4(a). In criminal proceedings, however, the notice is not jurisdictional. *Id*. Accordingly, this Court may review untimely appeals and determine whether the notice requirement should be waived. *Id*. "Waiver is not automatic and should only occur when 'the interest of justice' mandates waiver." *State v. Rockwell*, 280 S.W.3d 212, 214 (Tenn.

4

Crim. App. 2007). "To hold otherwise, by summarily granting waiver whenever confronted with untimely notices, renders the [thirty-day] requirement a legal fiction and circumvents the Rule." *Hill v. State*, No. 01C01-9506-CC-00175, 1996 WL 63950, at *1 (Tenn. Crim. App. Feb. 13, 1996). "Although [the petitioner's] filing was pro se, Rule 4 does not relieve pro se [petitioners] from the [thirty-day] notice requirement." *Hill*, 1996 WL 63950, at *1. It is the burden of the defendant to establish that a waiver of the notice of appeal is appropriate. Tenn. R. App. P. 4(b).

Here, the trial court's order denying the Defendant's 36.1 motion was file stamped January 23, 2023. The Defendant did not file his motion to reconsider until May 15, 2023, and he filed his notice of appeal on May 30, 2023. The Defendant's appeal of the trial court's denial of his 36.1 motion is untimely. Tennessee Rules of Criminal Procedure do not recognize a motion to reconsider, nor does a motion to reconsider toll the thirty-day limit to file a notice of appeal. *See State v. Boyd*, No. M2019-00301-CCA-R3-CD, 2019 WL 5623357, at *2 (Tenn. Crim. App. Aug. 27, 2019), *no perm. app. filed*; *State v. Huffstutter*, No. M2015-00950-CCA-R3-CD, 2016 WL 806143, at *3 (Tenn. Crim. App. Mar. 2, 2016), *perm. app. denied* (Tenn. June 29, 2016); *see also State v. Turco*, 108 S.W.3d 244, 245 n.2 (Tenn. 2003). Accordingly, the Defendant's motion to reconsider did not toll his thirty-day requirement to file his notice of appeal. His appeal is not timely. Waiver of the timeliness requirement should only occur when "the interest of justice" requires such, *Rockwell*, 280 S.W.3d at 214, and it does not in the instant matter. All of the issues raised by the Defendant are meritless and have been previously decided. The "interest of justice" does not mandate the waiver of the timeliness requirement, and the instant appeal is dismissed.

### III. Conclusion

Based on the foregoing reasoning and authorities, we dismiss this appeal.

_____
ROBERT W. WEDEMEYER, JUDGE